UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                                :
MERWAN JABER,                                   :
                                                :
            Plaintiff,                          :        CASE NO. 1:15-CV-728
                                                :
      v.                                        :
                                                :        OPINION & ORDER
CITY OF AKRON,                                  :
                                                :        [Resolving Doc. 31]
                                                :
            Defendant.                          :
                                                :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       On March 20, 2013, Defendant City of Akron demolished Plaintiff Jaber's building.

Plaintiff now brings claims for due process violation, negligence and recklessness, negligence

per se, intentional infliction of emotional distress, and negligent infliction of emotional distress

against Defendant.[1]

        Defendant moves for summary judgment.[2] The parties filed respective response and

reply briefs.[3] For the following reasons, the Court **DENIES IN PART** and **GRANTS IN PART**

Defendant's motion for summary judgment.

## I. Factual Background

       Plaintiff Merwan Jaber owned building property in the City of Akron at 1493-95 East

---

[1] Doc. 1.
[2] Doc. 31.
[3] Docs. 36, 37.

Case No. 1:15-CV-728
Gwin, J.

Market Street. The building had been used for apartments, retail, office, or storage space.[4] With

this lawsuit, Jaber claims Akron demolished his building without notice and without a

meaningful opportunity to contest Akron's tear-down.

In 2004, Akron inspected the building and found "deteriorated facade and walls."[5] Jaber

testified that he did structural work with his architect and structural engineer in order to address

the issues.[6] Jaber did not have receipts for that work. On March 5, 2012, Akron again inspected

the property and noted a "hazardous sidewalk."[7] Akron then issued an Order to Comply. Akron

also issued an order to comply for "unsafe facade and loose glass."[8] The City continued to issue

a number of Orders to Comply. Jaber testified that he did work to comply with the orders.[9]

On March 19, 2013, a windy day, starting around 3:45 p.m.,  Akron received multiple

911 calls stating that the facade of the building at 1493-95 East Market Street had fallen onto the

sidewalk.  In an apparent effort to comply with earlier Akron orders, Jaber had installed facade

material on the building's East Market Street side.  The wind loosened this facade and it dangled

for some period of time.

Akron's Fire and building Departments responded to the dispatch calls and closed East

Market Street.[10] Defendant Akron and employees from one of Plaintiff Jaber's other businesses,

Flashdance Cabaret, attempted to contact Jaber.[11] Plaintiff Jaber was in Cleveland and arrived at

---

[4] Doc. 32-2 at 87.
[5] *Id.* at 8.
[6] Doc. 32-1 at 42.
[7] Doc. 32-2 at 17.
[8] *Id.* at 24.
[9] Doc. 32-1 at 79-80.
[10] Doc. 32-2 at 58; Doc. 31-3.
[11] *Id.* at 48.

Case No. 1:15-CV-728
Gwin, J.

the Market Street site around 5:00 p.m.[12]

James Gardner, Akron's Building Inspector, went to the building to assess its condition and photograph the partial collapse.[13] There, Gardner spoke to Jaber. Both parties agree that Gardner gave Jaber his card. The parties disagree about who was supposed to call whom. Gardner testified that he instructed Jaber to call him about the building.[14] Jaber testified that Gardner said he would call Jaber.[15]

Gardner told Bradford Beckert, Akron's Superintendent of Building Inspection, about the situation with the 1493-95 East Market Street structure. Gardner testified that on the evening of March 19, 2013, he and Beckert discussed Gardner's recommendation to order an emergency demolition of the building at 1493-95 East Market Street.[16]

Jaber testifies that he moved the debris from where facade fell and went to Home Depot to purchase supplies to secure the building.[17] Jaber did not call Gardner. Gardner did not call Jaber. Further, Joe Nicolas, who had done contracting work for Jaber in the past, testified that Jaber called him on March 19, 2013 and asked Nicolas to go to the building and use a rope to tie the facade to the building.[18]

Beckert inspected the building on the morning of March 20, 2013. Beckert and Gardner agreed to move forward with the emergency demolition plan. Gardner contacted Beth

---

[12]/Doc. 32-1 at 102.
[13]/Doc. 31-3.
[14]/*Id.*
[15]/Jaber testified that Gardner told him "Go ahead and clean up the debris here on the sidewalk and then we will contact you in the morning–tomorrow, and we will see where we are going to go from here." Doc. 32-1 at 103.
[16]/Doc. 31-3.
[17]/Doc. 32-1 at 93.
[18]/Doc. 32-3 at 19-20.

-3-

Case No. 1:15-CV-728
Gwin, J.

Diefendorf, Akron's Department of Planning and Urban Development Supervisor, to schedule an emergency demolition of the property.[19] After the paperwork was processed, Gardner posted a copy of the Order to Comply ordering the emergency demolition on the front door to 1493-95 East Market Street.[20] The emergency demolition crew and Akron Site Inspector arrived to begin the demolition process around 3:30-4:00 p.m. on March 20, 2013.[21]

Akron's building code authorizes the emergency demolition of unsafe buildings as follows:

190.505 - Emergency work- Repair, demolition or razing.

A. Work or Razing Authorization. If a building or structure or part of a building or structure is in imminent danger or failure or collapse so as to endanger life or property, the Superintendent shall cause the necessary work to be done to render the building or structure or part of the building or structure temporarily safe. If it is impracticable to repair the building, the Superintendent may order the building or structure razed. This action may be taken regardless of whether the procedure prescribed elsewhere in this chapter or elsewhere in the building code has been instituted or not.

Section 190.503 of Akron's Code of Ordinances provides, "the Superintendent shall make reasonable efforts to notify property owners before demolishing unsafe buildings or structures declared to be in immediate danger of collapse or failure."

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[19]/Doc. 31-3; Doc. 31-5.
[20]/Doc. 31-3.
[21]/Doc. 31-5.

Case No. 1:15-CV-728
Gwin, J.

law.'"[22]  The moving party must first demonstrate that there is an absence of a genuine dispute as

to a material fact entitling it to judgment.[23]  Once the moving party has done so, the non-moving

party must set forth specific facts in the record—not its allegations or denials in pleadings—showing

a triable issue.[24] The Court views the facts and all reasonable inferences from those facts in favor

of the non-moving party.[25]

### III. Discussion

*A.  Procedural Due Process Violation*

The Due Process Clause of the Fourteenth Amendment does not prohibit every state

deprivation of an individual's life, liberty or property. Only those deprivations carried out

without due process are actionable under 42 U.S.C. § 1983. Generally, the process that is due

before the state may deprive an owner of property includes notice to the owner before the

deprivation and requires an opportunity for a predeprivation hearing.[26]

In *Harris v. City of Akron*, the Sixth Circuit examined an Akron building demolition

under an older but similar version of the ordinance at hand. Relying on the Supreme Court case

of *Parrat v. Taylor*,[27] the Sixth Circuit wrote,

> *Parratt* holds that government actors faced with the necessity to take quick action
> under circumstances where it is impracticable or impossible to provide
> predeprivation process do not violate an individual's due process rights by
> depriving him of property so long as there is in place a meaningful
> postdeprivation process. It is not necessary that the official conduct consist of

---

[22] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting  Fed. R. Civ. Pro. 56(a)).
[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[24] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[25] *Killion*, 761 F.3d at 580 (internal citation omitted).
[26] *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).
[27] *Parratt v. Taylor*, 451 U.S. 527 (1981).

-5-

Case No. 1:15-CV-728
Gwin, J.

random and unauthorized acts for *Parratt* to apply.[28]
.

Defendant argues that *Harris* controls here and that the facts underlying that case are identical to the facts here. This Court disagrees. The facts in *Harris* differ in important ways from the facts here.

In *Harris*, the City of Akron Building Inspection Office received a call concerning a potential building hazard at 11:30 am on July 17, 1990. Akron's superintendent of building investigated the building and found a "a two story brick building that he believed was dangerously close to falling onto Wooster Avenue and a neighboring occupied home. The upper east wall of the building had moved inward four to five feet, and he though the roof was collapsing."[29] The chief building inspector also personally examined the building and determined that an emergency demolition was necessary.

Akron then attempted to call the owner of the building. The chief building inspector left an emergency message with the owner's secretary. Akron attempted to locate the owner through an acquaintance as well.

The chief building inspector in *Harris* decided that the condition of the building required immediate action, and initiated plans to destroy the building partially. The emergency demolition began at 4:10 pm on July 17, the "same day that the damage to the building was reported to the building department."[30]

The factual narrative in *Harris* differs in a number of critical ways from what happened with the demolition of Plaintiff's Akron building.

---

[28]/*Harris,  20 F.3d at 1405*.
[29]/*Id.* at 1398.
[30]/*Id.*

Case No. 1:15-CV-728
Gwin, J.

First, the *Harris* building demolition took place on the same day that Akron was notified of the potential building hazard. Akron did not demolish Jaber's building until a full twelve hours after first learning of the facade falling. Gardner testified that he gave Jaber his business card around 5:00 p.m. and told Jaber to call him.[31/] Jaber disputes this and testified that Gardner told him he would call Jaber.  Regardless, Akron did not begin demolition of the building until 3:30-4:00 p.m. on March 20, 2013,[32/] twelve hours after Akron was first notified of the building facade falling. It would not have been impracticable or impossible to notify Jaber of the demolition plans in that twelve hour time period.

Second, the building hazard in *Harris* was of a different nature than the building situation here. The superintendent of building in *Harris* believed that the building was dangerously close to falling onto an occupied neighboring home. The upper east wall of the building had moved inward four to five feet. Here, the facade of Jaber's building had already fallen and had already been removed. Akron cordoned off the sidewalk, and unlike in *Harris*, there does not seem to have been an imminent threat of the building falling onto any nearby occupied structure.

Third, in *Harris*, Akron attempted to contact the building owner to notify him of the demolition plans. Akron did no such thing with Jaber. After having discussed the situation with Jaber on the afternoon of March 19, Akron made no attempt to contact Jaber prior to the March 20 afternoon demolition.  Akron failed to contact Jaber though it knew he was making at least some effort to repair the wind damage to the building.

Given these significant factual discrepancies, we find that *Harris* does not control here.

As such we find that a genuine issue of material fact exists as to whether Jaber's building

---

[31/]Doc. 31-3.
[32/]Doc. 31-5.

-7-

Case No. 1:15-CV-728
Gwin, J.

was in "imminent danger of failure or collapse so as to endanger life or property" and whether it was "impracticable or impossible" for Akron to contact Jaber.

Further, this Court finds that there exists a genuine issue of material fact as to whether the wind damage and facade falling served only as pretextual reasons for Akron to demolish the building.

The Sixth Circuit has found that conduct that is pretextual violates procedural due process.[33/] Although the evidence here is admittedly less persuasive than that in *Diluzio*, viewing the facts in the light most favorable to Jaber, this Court finds that there exists a genuine issue of material fact as to whether Akron's justification for demolishing the building was mere pretext.

Councilman Moneypenny testified that he told Jaber that he received a lot of complaints about the building. Further, Moneypenny testified that buyers such as Ganley and Two Men and a Truck had approached him about buying the building. Moneypenny told Jaber about the offers. Moneypenny also asked Jaber if it would be okay for Moneypenny "to approach the city to see if we could tear the building because sometimes we have grant moneys."[34/] Jaber was not interested. Jaber testified that Moneypenny encouraged Jaber to have the building torn down by the city to facilitate the property development by Ganley Mercedes.[35/]

Summit County communicated in November 2012 its intention of foreclosing on the Jaber property to Akron. In response,  Brad Beckert sent an email to John Moore, Abraham Wescott, and Christopher Snyder informing them that Beckert had spoken to Ganley about

---

[33/] *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 614 (6th Cir. 2015).
[34/] Doc. 34-4.
[35/] Doc. 32-1 at 153.

Case No. 1:15-CV-728
Gwin, J.

purchasing the Jaber property.[36] Given the history of complaints against the building and the

prior discussion about tearing it down, there exists a genuine issue of material fact as to whether

Akron's proffered reason for the emergency demolition was pretext.


### B. Substantive Due Process

Substantive due process involves the "right not to be subject to 'arbitrary or capricious'

action by a state either by legislative or administrative action. "[37] There are generally two types

of substantive due process claims: "(1) official acts that are unreasonable and arbitrary and 'may

not take place no matter what procedural protections accompany them,' and (2) official conduct

that "shocks the conscience."[38]

Based on the evidence above, this Court finds that there exists a genuine issue of material

fact as to whether Akron acted in an unreasonable and arbitrary way. Given the amount of time

Akron waited before commencing a demolition and the potential underlying motive to demolish

the building so that private buyers could buy it, it is possible Akron acted in an unreasonable and

arbitrary way by not affording Jaber proper notice. Akron again cites to *Harris* as precedent that

Jaber's  substantive due process claim must be dismissed, but this Court has already found that

*Harris* does not control here. Thus, Plaintiff's substantive due process claim survives summary

judgment.

### C. Negligence, Negligence Per Se and Recklessness

Plaintiff Jaber brings claims of negligence and recklessness and negligence per se against

---

[36]/Doc. 34-1 at 141.
[37]/ *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).
[38]/ *Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985) (en banc) (quoting *Hudson v. Palmer,* 468 U.S. at 541 n.4. (separate opinion of Stevens, J.)).

-9-

Case No. 1:15-CV-728
Gwin, J.

Akron. The Ohio Supreme Court has found that, "[A] political subdivision has a full defense to liability when the conduct involved is not willful or wanton, and therefore, if conduct is only reckless, the political subdivsion has a full defense to liability."[39] Here, Plaintiff Jaber only pleaded negligence, negligence per se,  and recklessness against Akron. O.R.C. § 2744.02 provides that a "political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Subsection B then sets out a number of exceptions to the immunity provision. None of those exceptions apply here.

Plaintiff Jaber cites to *DiLuzio* to argue that there is no immunity for acts committed in bad faith or in a reckless manner. However, in *DiLuzio*, the Plaintiff sued both the political subdivision and individual employees involved, including the Mayor.[40] The Sixth Circuit there found that the Mayor was not entitled to state law immunity under O.R.C. § 2744.03(A). Because Jaber only sued the City of Akron and Akron is immune to liability under O.R.C. §2744.02, *DiLuzio* does not apply here.

Thus, this Court grants summary judgment to Akron as to the negligence, recklessness, and negligence per se claims.

### D. Intentional Inflication of Emotional Distress

Plaintiff also brings a claim against Akron for intentional infliction of emotional distress.

-------------------------------------

[39] *Anderson v. Massillon*, 983 N.E.2d 266, 274 (Ohio 2012).
[40] *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604 (6th Cir. 2015).

-10-

Case No. 1:15-CV-728
Gwin, J.

To recover on an intentional infliction of emotional distress claim, Plaintiff must prove four

elements:

> (1) that the actor either intended to cause emotional distress or knew or should
> have known that actions taken would result in serious emotional distress to the
> plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go
> "beyond all possible bounds of decency" and was such that it can be considered
> as "utterly intolerable in a civilized community," (3) that the actor's actions were
> the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish
> suffered by plaintiff is serious and of a nature that "no reasonable man could be
> expected to endure it."[41]

"When claiming an intentional infliction of mental distress, only that conduct which

exceeds 'all possible bounds of decency' is actionable."[42] For the conduct to qualify as

sufficiently extreme and outrageous, "'[g]enerally, the case is one in which the recitation of the

facts to an average member of the community would arouse his resentment against the actor, and

lead him to exclaim, Outrageous!' "[43]

"Serious emotional distress describes emotional injury which is both severe and

debilitating. Thus, serious emotional distress may be found where a reasonable person, normally

constituted, would be unable to cope adequately with the mental distress engendered by the

circumstances of the case."[44] "A non-exhaustive litany of some examples of serious emotional

distress should include traumatically induced neurosis, psychosis, chronic depression, or

phobia."[45]

---

[41]/*Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. Ct. 1983) (quoting Restatement (Second) Torts § 46 cmts. d, j (1965)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

[42]/ *Davis v. Billow Co. Falls Chapel*, 610 N.E.2d 1024, 1026 (Ohio 1991).

[43]/*Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) Torts § 46, cmt. d (1965)).

[44]/*Paugh v. Hanks*, 451 N.E.2d 759,759 (Ohio 1983).

[45]/*Id.*

Case No. 1:15-CV-728
Gwin, J.

Plaintiff Jaber shows no evidence of serious emotional distress. He only testified that the demolition put him in a "down" mood and provided no documentation of mental distress.[46] Jaber loses on this claim.

### E. Negligent Infliction of Emotional Distress

The Ohio Supreme Court has stated that "Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person."[47]

Here, Jaber did not witness an accident and was not in fear of physical consequences to his own person. As such, Akron prevails on summary judgment as to negligent infliction of emotional distress.

### F. Punitive Damages

Because a municipality is immune from punitive damages in a §1983[48] or O.R.C. Chapter 2744 suit,[49] there is no mechanism by which Plaintiff may obtain punitive damages against Defendant in this case. Plaintiff's punitive damages claim is thus barred by law.

---

[46] Doc. 32-1.
[47] *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669  (Ohio 1995).
[48] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 273 (1981).
[49] "Punitive or exemplary damages shall not be awarded." Ohio Rev. Code  § 2744.05.

Case No. 1:15-CV-728
Gwin, J.

**IV.**

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART**

Defendant's motion for summary judgment in accordance with this opinion.

IT IS SO ORDERED.

Dated: December 18, 2015.                    s/       *James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE